GILES S. BOGGESS v. WILLIAM B. LILLY.

Where the plaintiff and defendant, dealing faro in partnership, became indebted by losses to A. B and C, and the plaintiff, in consideration that the defendant paid A and B, and assumed to pay C, which assumption C received in discharge of the plaintiff, gave the defendant his note for his share of the losses, it was held that the consideration of the note was not unlawful, and that the defendant was entitled to recover, the full amount of it, although he had not yet paid C.

Where the Supreme Court reversed and reformed the judgment, establishing the appellant’s right to judgment on a note and to the dissolution of an injunction which had been obtained to prevent a sale under a deed of trust given to secure the note, the appellee having died, and his administrator become a party, judgment was not given for a sale of the land, but the judgment was ordered to be certified to the Probate Court, to be paid in due course of administration.

Appeal from Travis.  Tried below before the Hon. Thomas H. DuVal.

Suit by appellee to enjoin the sale of real property under a deed of trust, given to secure the payment of a note for money

lost by plaintiff and defendant in dealing faro in partnership ; the plaintiff alleging that the defendant fraudulently obtained said note and deed of trust by falsely representing that he had paid said losses, when in fact he had not, &c. ; and that the note and deed of trust were given without lawful consideration. Allegation also of usury. Answer by defendant that said promissory note and said deed of trust were executed for the consideration hereinafter stated ; that, at the special instance and request of the said Lilly, this respondent advanced to one Henry W. Sublett and one William Allen the sum of seven hundred dollars, which seven hundred dollars, so advanced and paid out by this respondent at the request and instance of the said Lilly, as above stated, formed part of the consideration for which said note and deed were executed. And, at the like special instance and request of him, the said Lilly, this respondent assumed to pay for him, the said Lilly, to one James R. Jackson, the sum of five hundred and fifty dollars, which amount the said Lilly was then owing the said Jackson, and for which amount, by an agreement made by and between the said Jackson and Lilly, and respondent, your respondent became the debtor of said Jackson in the room and stead of him the said Lilly, which agreement was accepted by the said Jackson and agreed to by said Lilly ; which amount of money respondent still owes to the said Jackson, and for which amount of money the said Jackson still holds respondent bound to him ; which five hundred and fifty dollars, together with the seven hundred dollars, advanced to the said Sublett and Allen, as above stated, amounting in all to the sum of twelve hundred and fifty dollars, form the consideration for which said note and deed of trust were executed. And respondent further states that, true it is, for the said sum of twelve hundred and fifty dollars of money and credit, so advanced by this respondent for him, the said Lilly, he, the said Lilly, agreed and promised to pay this respondent interest at the rate of five per cent. per month on said twelve hundred

and fifty dollars, from the date of said promissory note until the payment mentioned in said note, which interest, so agreed to be paid, amounted to the sum of seventy dollars.

Defendant prayed a dissolution of the injunction. Judgment for the $1250, order of sale, &c.

The death of the appellee was suggested in this Court, and his administrator made a party.

*H. W. Sublett*, for appellant.

*Hancock & West*, and *Chalmers*, for appellee.

WHEELER, J. Assuming that the Court will interpose, by injunction, to restrain parties from executing such a contract as that set out in the petition, in the manner proposed ; and that the petition is to be taken as true, except in so far as it is nega- tived by the answer ; and that the answer is to be taken as true, and as disproving the averments of the petition which it negatives,—which, we think is the view which the parties took of the case, in submitting it to the judgment of the Court on the merits, on petition and answer,—the state of case which is presented is this : The plaintiff and defendant were part- ners in illegal gaming, and were losers to A, B and C. At the request of the plaintiff, the defendant paid for him to A and B seven hundred dollars, which was due from the plaintiff as his part of the losses ; and at the like request of the plaintiff, the defendant assumed to pay for him to C, five hundred and fifty dollars, which was in like manner due from the plaintiff, and for which C holds the defendant bound. And the money so advanced and obligation so assumed by the de- fendant for the plaintiff, and at his request, were the consid- eration for the note and deed of trust, the collection and exe- cution of which, the plaintiff seeks to restrain. The question is, whether the consideration was legally sufficient to support the contract.

In the case of Armstrong v. Toler, (11 Wheat. R. 258,) quoted in Marshall v. Shelton, (16 Tex. R. 359,) there is the following review of the authorities upon this subject, by Chief Justice Marshall: "In Faikney v. Raynous, 4 Burr. 2069, " the plaintiff and one Richardson were jointly concerned in " certain contracts prohibited by law, on which a loss was sus- " tained, the whole of which was paid by the plaintiffs; and a " bond was given for securing the repayment of Richardson's " portion of the loss. To a suit on the bond, the defendants " pleaded the Statute prohibiting the original transaction, but " the Court held, on demurrer, that the plaintiff was entitled " to recover. Although this was the case of a bond, the judg- " ment does not appear to have turned upon that circumstance. " Lord Mansfield gave his opinion on the general ground, that " if one person apply to another to pay his debt, (whether con- " tracted on the score of usury or for any other purpose,) he is " entitled to recover it back again. This is a strong case to " show that a subsequent contract, not stipulating a prohibited " act, although for money advanced in satisfaction of an unlaw- " ful transaction, may be sustained in a Court of Justice. In " a subsequent case, 6 Tenn. R. 410, Ashhurst J. said defend- " ants were held liable because they had voluntarily given ano- " ther security.

"In the case of Petrie and another, executors of Keeble v. " Hannay, 3 Term. Rep. 418, the testator of the plaintiffs was " engaged with the defendant and others in stock transactions " which were forbidden by law, on which considerable losses " had been sustained, which were paid by Portis, their broker. " Keeble repaid the broker the whole sum advanced by him, ex- " cept eighty-four pounds, which was in part the defendant's " share of the loss for which Keeble drew a bill on the " defendant, which was accepted. The bill not being paid, " a suit was brought upon it by Portis, against the ex- " ecutors of Keeble, and judgment obtained, they not set- " ting up the illegal consideration. The executors brought

" this action to recover the money they had paid, and it was " held by three Judges against one, on the authority of Faik- " ney v. Raynous, that the plaintiffs could not maintain their " action. A distinction was taken in cases where money was " paid by one person for another, for an illegal transaction, by " which the parties were not bound , between a voluntary pay- " ment and one made on the request of the party ; between an " assumpsit raised by operation of law, and an express assump- " sit. Although the former would not maintain the action, it " was held that the latter would.

"This also, is a strong case to show that a new contract, by " which money is advanced at the request of another, or which " is the same thing, where there is an express promise to pay, " may sustain an action, although the money was advanced to " sustain an illegal claim.

" In Farmer v. Russell et al., 1 Bos. & Pull. 295, it was held, " that if A is indebted to B on a contract forbidden by law, " and pays the money to C for the use of B, a Court will give " judgment for B against C for this money. In this case B " could not have recovered against A ; but when the money " came into the hands of C, a new promise was raised on a " new consideration, which was not infested by the vice of " the original contract. In this case Chief Justice Eyre said, " that the plaintiff's demand arose simply from the circum- " stance that money was put into the hands of C for his use ; " and Justice Buller said, that the action did not arise upon " the ground of the illegal contract. Yet, in this case, A's orig- " inal title to the money was founded on an unlawful contract, " and he could not have maintained an action against B.

" The general proposition stated by Lord Mansfield in Faik- " ney v. Raynous, that if one person pay the debt of another " at his request, an action may be sustained to recover the mo- " ney, although the original contract was unlawful, goes far to " decide the question now before the Court. That the person " who paid the money knew it was paid in discharge of a debt,

Boggess v. Lilly.

" not recoverable at law, has never been held to alter the case. " A subsequent express promise is, undoubtedly, equivalent to " a previous request."

These cases, and the great authority by which they are thus approved, must be held to be decisive of the present case in favor of the appellant. We have stated and considered the case, in the view of it, most strongly against him ; perhaps more so than the record presents it. But as stated, it comes clearly within the principle of Faikney v. Raynous, and the other cases referred to by Chief Justic Marshall, in the extract we have taken from his Opinion in Armstrong v. Toler.

We are of opinion therefore that the judgment be reversed; and that judgment be here rendered for the appellant for so much of his demand as is not void for usury ; that is, the principal sum advanced. But as it appears that the appellee is deceased, since the bringing of the suit, the judgment must be certified to the Probate Court, to be there settled in the due course of administration. (Robertson v. Paul, 16 Tex. R.)

Reversed and reformed.