### B. B. Cain v. J. F. Woodward et al.

#### No. 2689.

1. **Execution Sale After Death of Defendant.**—An execution issued and levied upon land subsequent to the death of the defendant in execution upon a judgment rendered against him during his lifetime is not void although voidable.

2. **Sale Under Execution After Return Day.**—A sale of land under an execution after its return day is void.

3. **Return Day of Execution.**—The endorsement upon an execution by the clerk issuing it does not affect the return day as fixed by the statutes of the State.

4. **Equities.**—One claiming land under a void execution sale through a quitclaim deed has no claim to an adjustment of any equities between the purchaser under the execution sale and the defendant in execution or one holding under him.

Appeal from Hamilton. Tried below before Hon. T. L. Nugent.

Appellant Cain, May 2, 1883, sued Woodward in trespass to try title for 960 acres of land in Hamilton County granted to N. H. Watrous, assignee of John Person. Cain and Woodward both claimed through. John C. Watrous; Cain by mesne conveyances under a sale made by the sheriff of Hamilton County under an alias execution issued March 28, 1877, in favor of George Butler, and against John C. Watrous and H. L. Kinney, upon a judgment recovered June 2, 1860, in the District Court of Galveston County.

The defendants attacked the title under the sheriff sale as void, because made after the return day of the execution, and because the execution was issued after the death of Watrous.

The plaintiff also sought in the alternative to be subrogated to the rights of Butler, the plaintiff in execution, should the sale be declared invalid. Several of the mesne conveyances under which plaintiff held were quitclaim deeds.

The execution was in the usual form. On it was endorsed: "No. 2439, District Court, County of Galveston, Fi. Fa. No. 7746. George Butler v. John C. Watrous and Henry L. Kinney. Cash with no appraisement. Issued 28 day March, 1877. Returnable in 60 days, 1877.

"J. P. HARRISON, Clk. D. C. G. C.

"By A. B. HARRISON, Deputy."

The execution came to hands of the sheriff April 3, and levy was made April 4. Sale was made the first Tuesday in May thereafter. The first term of the Galveston District Court after the issuance of the writ (March 28) began on first Monday, the second day of April, 1877. The levy was made after the first day of the next term of the court.

*C. K. Bell* and *J. A. Eidson,* for appellant.— 1. The officer to whom a writ of execution is directed can justify under it if its invalidity is not apparent upon its face, and when the officer can justify under the writ the purchaser will be protected. Hancock v. Metz, 15 Texas, 210; Crocker on Sheriffs, sec. 283; Freem. on Ex., secs. 101, 343.

2. An execution issued after death of defendant is only relatively void; i. e., it would be declared void when such is shown in a proceeding brought for that purpose by the proper parties in the proper time. This being a collateral proceeding and the proper parties not being before the court, such defect can not be interposed as a defense to this action. Taylor v. Snow, 47 Texas, 462.

3. As to the adjustment of equities. French v. Grenet, 57 Texas, 280; Burns v. Ledbetter, 56 Texas, 282; Jones v. Smith, 55 Texas, 383; Burns v. Ledbetter, 54 Texas, 378; Johnson v. Caldwell, 38 Texas, 217; Freem. on Ex., sec. 44; Rorer on Jud. Sales, sec. 873; Bouv. Law. Dic., "Private Laws."

*G. R. Freeman,* for appellees.— 1. The execution sale after the return day was void. The ordinance of the Constitutional Convention of Texas of 1876, fixing the terms of the District Courts of the State; Act Thirteenth Legislature fixing return day, approved June 4, 1873, Gen. Laws 13th Leg., p. 209; Act January, 1839, prescribing form of execution and fixing return day, Hart. Dig., arts. 1271, 1274; Act January 27, 1842, fixing return day, Hart. Dig., art. 1327; Rev. Stats., arts. 2281, 2282; Hester v. Duprey, 46 Texas, 626, 627; Young v. Smith, 23 Texas, 600; Towns v. Harris, 13 Texas, 507; Bennett v. Gamble, 1 Texas, 134.

2. The execution after the death of Watrous, the defendant in execution, could form no basis of title. Const. 1876, art. 5, secs. 8, 11; Act of 1876, Gen. Laws 15th Leg., p. 107, secs. 58, 59, 61–64, 69–73, 76, 77, 85, 88, 92, 123, 154; Pasch. Dig., arts. 5690, 5666, 5667, 5681, 5485, 5486, 5490; Cook v. Sparks, 47 Texas, 34–37; McMiller v. Butler, 20 Texas, 402; Ansley v. Baker, 14 Texas, 611; Kendrick v. Rice, 16 Texas, 259; Turner v. Smith, 9 Texas, 628; Bennett v. Gamble, 1 Texas, 140; Rev. Stats., art. 3128; Emmons v. Williams, 28 Texas, 779; Conkrite v. Hart, 10 Texas, 140; Bennett v. Gamble, 1 Texas, 133; Ransom v. Williams, 2 Wall., 317; Erwin's Lessee v. Dundas, 4 How., 58; Freem. Void Jud. Sales, secs. 24, 47.

3. The several deeds offered by plaintiff were incompetent and irrelevant. They were properly excluded. Brown v. Lane, 19 Texas, 205; Stegall v. Huff, 54 Texas, 196; Miller v. Brownson, 50 Texas, 597; Hatchett v. Conner, 30 Texas, 104; Robson v. Osborn, 13 Texas, 307.

HOBBY, JUDGE.—The questions arising in this case, in the order presented, are:

1. Whether an execution issued and levied upon land subsequent to the death of the defendant in execution upon a judgment rendered against him during his lifetime is void? (This question arises upon appellant's demurrer to appellee's answer alleging this fact.)

2. Is a sale of land under an execution made after the return day thereof void?

3. Can remote vendees of the land so sold holding by mesne conveyances under the plaintiff in the execution, who bought at his own sale and whose heir subsequently conveyed by quitclaim, have any equity upon which to invoke the doctrine of subrogation?

With respect to the first question presented it will be sufficient to say, without entering into an elaborate discussion of it, that it has been the subject of several well considered cases in our State, notably that of Taylor v. Snow, 47 Texas, in which the early case of Conkrite v. Hart, 10 Texas, where the principle was in effect recognized that such a sale was absolutely void, and other cases in accord with it, were after a thorough consideration overruled, and the conclusion was reached that such a sale

was not absolutely void. So also in Thompson v. Jones, Austin Term, 1889 (12 S. W. Rep., 79),* this subject was again under consideration, and Taylor v. Snow, *supra*, cited with approval to the effect "that while a sale of property under execution after the death of the defendant is relatively void, and the title acquired by the purchaser at such sale can not be maintained against the administrator or parties acquiring their title under or through the administration, and that such sale may be avoided by any party having an interest in the property if he should seek to do so in the proper time and manner, this can not be done where there has not been and can not be any administration upon the estate, in a collateral proceeding."

As said in Thompson v. Jones, *supra*, we conceive the above authority to be conclusive of the question, and that there was no error in overruling the exceptions of the plaintiff (appellant) to the allegations of the defendant to the effect that the sale was absolutely void because made under an execution issued and levied subsequent to the death of John Watrous, defendant in execution.

The decision of the second question, whether the sale of the land under the execution made after the return day was void, necessarily requires the determination of the antecedent inquiry, whether the law by its own terms as it then stood definitely fixed the return day of the execution, or whether the language, "shall be made returnable," occurring in the law with reference to such writs, clothed the clerk with power by an endorsement to fix the return day.

The law applicable to this case provided that "all executions shall be made returnable on or before the first day of the next term of the court," etc. Laws of 1873, p. 209, Pasch. Dig., art. 3775. True the proviso in this section authorized the writ to be made returnable by the plaintiff's attorney within sixty or ninety days, but this applied only to first executions under that class of judgments mentioned in section 1 of the Act of 1873 (Pasch. Dig., art. 3772); that is, final judgments rendered in the District Court in counties where the term continued until the business was disposed of, or three weeks after overruling a motion for new trial. It is not pretended, however, that the writ under consideration comes within this class.

It was issued on March 28, 1877, received by the officer April 3, 1877, levied on the land involved in this suit on the 4th day of April, 1877, and the sale occurred on the first Tuesday in May, 1877. The next term of the District Court of Galveston County, to which the writ was returnable, began on the first Monday in April, 1877. See 26th Ordinance Constitution 1876, fixing terms of District Courts. It is obvious from this that the sale took place about one month after the return day of the

---

*Rehearing granted at Tyler Term, and sent back to Austin, where still pending.

writ, unless the endorsement, "returnable in sixty days," which appears on the back of the execution over the clerk's signature, can be said to have the effect itself of fixing the return day sixty days from the 28th of March, 1877, the date of the issuance of the writ. If such is the effect of the endorsement the writ would have been returnable about the 28th of May, 1877, and in that event the sale would not have occurred after the return day. But our execution laws have been repeatedly construed by our courts as fixing by their own phraseology the return day of the writ. Hester v. Duprey, 46 Texas, 626; Towns v. Harris, 13 Texas, 507; Bennett v. Gamble, 1 Texas, 134.

"All executions shall be made returnable on or before the first day of the next term" was the language of the statute. And if the clerk can by an endorsement on the back of the writ fix the return day he can thus render nugatory the language of the statute, which fixes the return day "on or before the first day of the next term."

We are of opinion that such is the time prescribed by the law itself for the return day, except in the cases mentioned in article 3772, Paschal's Digest, and we do not think that this can be in any manner affected or defeated by the endorsement of the clerk, as in this case, under the laws then in force.

It is manifest from the record that the sale of the land occurred after the return day, which was the first Monday in April, 1877; and having so occurred on the first Tuesday in May, 1877, it was at a time when the execution was *functus officio.* Such being the case, the question recurs, is such a sale void? That a sale of land under an execution made after the return day thereof is a nullity and the purchaser acquires no title thereby is well settled in Towns v. Harris, 13 Texas, 507; Young v. Smith, 23 Texas, 598.

The reason upon which the principle is founded, that a sale of real property made under an execution after the return day is void, is that, unlike the levy of the writ upon personal property, a levy upon land vests no right of possession or property in the officer. Under it he has no power to turn the defendant out and take possession, but he can only enter for the purpose of the sale, and there must exist some lawful authority for the conversion and sale of the property. The execution authorizes the officer to pass the title but not to change the possession. No such power is conferred by the execution after the return day. Hence there is no power in the officer, in the absence of a *venditioni exponas,* to enter into possession for the purpose of a sale, and no power to pass title. Young v. Smith, 23 Texas, 599. We think therefore that the court did not err in holding the sale after the return day void, and that it vested no title in the purchaser.

With respect to the last question raised—that is, appellant's right of

subrogation—it is sufficient to say that no equities exist as between the parties to this suit upon which to base the claim.

We think there is no error in the judgment and that it should be affirmed.

*Affirmed.*

Adopted October 22, 1889.